THOMAS RODNEY, Plaintiff in Error, *v.* THE ILLINOIS CENTRAL RAILROAD COMPANY, Defendant in Error.

### ERROR TO ALEXANDER.

The constitution of Illinois prohibits slavery; therefore, negroes within its jurisdiction are supposed to be free.

The State of Illinois being an independent sovereignty, will determine for itself the condition of all persons within its territory; subject to the Constitution of the United States, and the laws made under the authority of that instrument.

Slavery is the creation of municipal regulations in States where it exists, and such regulations have no extra-territorial operation or binding force in another sovereignty.

Rodney v. Illinois Central Railroad Company.

The laws of other States recognizing slavery, being repugnant to the laws and policy of the institutions of Illinois, neither the law of nations nor the comity of States can affect the condition of a fugitive in Illinois, so as to give the owner any property in, or control over him, by force of any State authority.

The remedy in matters connected with fugitive slaves, is to be found under acts of Congress, and in the courts of the United States.

Property in persons being repugnant to the laws and constitution of Illinois, trover cannot be maintained for the recovery of a person, or for satisfaction for the loss.

THIS was an action on the case, commenced by the plaintiff against the defendant for carrying away from him his slave Joseph, a man of color, whereby he lost his slave and his services. The declaration was filed in the Alexander Circuit Court, at October term, 1855, and contains eight counts. Seven of these counts charge, in substance, that plaintiff is a citizen of the State of Missouri, and by the laws of that State was entitled to the services and person of Joseph, and that at the instance of defendant he fled from plaintiff to Cairo, in the State of Illinois, and was by the defendant carelessly and negligently taken on board of its cars on its road, and carried away from the plaintiff, whereby he lost the services of his slave Joseph, they, the said defendants, then and there knowing that the said Joseph owed service to the said plaintiff, by means whereof the said plaintiff lost the services of his said slave, to the damage of the plaintiff of $3,000. The eighth count is in trover for the conversion of the plaintiff's slave Joseph, at the county of Alexander and State of Illinois. The defendant filed a demurrer to this declaration, and the court rendered final judgment upon the demurrer for costs of suit in favor of the defendant, and this judgment is assigned for error. This cause is brought to this court by writ of error.

The demurrer in this case was heard before PARRISH, Judge, at October term, 1856, of the Alexander Circuit Court.

J. DOUGHERTY, for Plaintiff in Error.

C. G. SIMONS, for Defendant in Error.

SKINNER, J. The plaintiff sued the Illinois Central Railroad Company in case, for receiving as a passenger on their road, at Cairo, in this State, the negro slave of the plaintiff, held to service under the laws of Missouri, knowing the negro was the plaintiff's slave, under the laws of the State of Missouri, escaping from his service, and carrying the negro, as such passenger, to Chicago, thereby, in this State, aiding the fugitive to escape from service. The declaration also contains a count in trover for the conversion by the defendants, in this State, of the plaintiff's slave, held to service under the laws of Missouri.

The court sustained a demurrer to the declaration, and upon this decision the assignments of error are founded.

The constitution of this State prohibits negro slavery, and, therefore, negroes within our jurisdiction are presumed to be free. *Hone* v. *Ammons*, 14 Ill. R. 29 ; *Bailey* v. *Cromwell*, 3 Scam. 71 ; *Kinney* v. *Cook*, ibid. 232.

The State of Illinois, as one of the independent sovereignties of the Union, will determine the condition of all persons within the State according to her own laws and institutions, and can be limited or controlled, in this respect, only by the Constitution of the United States and the laws of Congress made under authority of that instrument.

Slavery in the States, where it exists, has its foundation in the municipal regulations of such States, which have no extra-territorial operation, and no binding force in another sovereignty.

The law of Missouri, under which the negro owes service to the plaintiff, being repugnant to our law and the policy of our institutions, neither by the law of nations or the comity of States, can affect the condition of the fugitive slave in this State, or, within our jurisdiction, give the owner any property in or control over him.

The constitution of the State is here the paramount law, except in so far as the Constitution of the United States, or the powers therein delegated to Congress, may limit or control its operation. The owner, therefore, by force of the laws of another State, under the law of Illinois, has no property in the fugitive, and can here, under State authority, assert no property in, or power over him. *Jones* v. *Vandzant*, 2 McLean's R. 596 ; *Giltner* v. *Gorham*, 4 McLean's R. 402 ; *Prigg* v. *The Commonwealth of Pennsylvania*, 16 Peter's R. 539.

The Constitution of the United States, however, gives the owner the right of reclamation of his slave escaping from service, wherever he may be found within the United States; and Congress, under authority of this clause, and in the rightful exercise of power, to render the provision effectual, and to afford ample and uniform remedy for recaption and return of fugitive slaves, by the act of 1793, provided for the recaption and surrender of fugitive slaves within the States and territories of the Union, imposed penalties for aiding the escape of such fugitives, and for opposing or interrupting reclamation under the remedies given the owner. By the terms of that act, concurrent jurisdiction seems to have been conferred upon the federal and State tribunals.

By the act of Congress of 1850, on the same subject, the right of the owner to reclaim his fugitive slave is declared; remedies for recaption and return of the fugitive to the State or

territory whence he may have fled, are provided ; punishments for obstructing recaption and return, and for harboring or concealing the fugitive to prevent recaption, are provided ; and damages for the injury, by way of penalty, are given the owner, to be recovered by action in the district or territorial court of the United States, where the offense is committed.

The act of 1850, by necessary implication, repeals the act of 1793, so far as the provisions of the former conflict with the latter, whether the conflict consists in remedies given or penalties imposed.   The act of 1850 not only provides different remedies, penalties, and modes of procedure, but names the forums in which they may be enforced ; and, therefore, aside from the question of the power of Congress to confer jurisdiction upon State tribunals, it would seem they intended to confine, in execution of the federal laws upon this subject, jurisdiction to the federal courts.   The Constitution of the United States vests the federal judicial power in the Supreme Court, and such inferior courts as Congress may see fit to establish ; and provides that the judicial power shall extend to all cases, in law and equity, arising under the Constitution and laws of the United States. Const. U. S., Art. 3.

The federal courts, therefore, are the proper forums for causes arising under the Constitution of the United States and the laws of Congress made under its authority ; and the State tribunals (at least, unless jurisdiction is expressly conferred) cannot take cognizance of such causes.

If, however, the State court has jurisdiction of the cause, under the common or statutory law of the State, the federal constitution or laws, coming incidentally in question, will be recognized and enforced.   *Martin* v. *Hunter*, 1 Wheaton, 336 ; *Houston* v. *Moore*, 5 ibid. 49 ; Story's Com. on the Const., secs. 1749 to 1755 ; 1 Kent's Com. 396 to 405 ; *United States* v. *Lathrop*, 17 John's R. 4.   See, also, *Prigg* v. *The Commonwealth*, before cited ; *Moore* v. *The People*, 14 Howard's U. S. R. 13 ; Thornton's case, 11 Ill. R. 332.

The count in trover cannot be sustained for the reasons stated. Property in persons being repugnant to our laws and the genius of our State institutions, our courts will not enforce, as a general rule, the laws of other States recognizing this species of property, where the cause of action, based upon such laws, arises in this State.   *Hone* v. *Ammons*, 14 Ill. R. 29.   Trover is brought for the wrongful conversion to another's use of one's personal property, and judgment therein for damages, with satisfaction, vests in the defendant the property converted.

The plaintiff, under the local law, where the alleged conversion occurred, had no property in the negro, and none under

that law by force of a recovery in the action and satisfaction, could vest in the defendant.

*Judgment affirmed.*